UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARTHA AMATO,

                     Plaintiff,                    **COMPLAINT**

      -against-
                                      Jury Trial Demanded

THE COUNTY OF NASSAU, and THOMAS
KRUMPTER, RONALD WALSH, MICHAEL SAVINO,
DENNIS BOODY, DANIEL HASTINGS, and ROBERT
BROWNE, in their official and individual capacities,

                    Defendants.
-------------------------------------------------------------------X

       Plaintiff, Martha Amato, by and through her attorneys, LEEDS BROWN LAW, P.C.,

alleges upon knowledge as to herself and her own actions, and upon information and belief as to

all other matters, as follows:

## JURISDICTION AND VENUE

       1. This is a civil action based on Defendants' violations of Plaintiff's rights as

guaranteed to her by the First and Fourteenth Amendments of the United States Constitution, as

enforced by 42 U.S.C. § 1983 ("Section 1983"), as well as Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. 2000e, *et seq.*, the Age Discrimination in Employment Act of 1967,

as amended ("ADEA"), and the New York State Human Rights Law, Executive Law § 290, *et*

*seq.*, and any other cause of action which can be inferred from the facts set forth herein.

       2. Plaintiff previously filed a Charge of Discrimination with the Equal Employment

Opportunity Commission ("EEOC").  Plaintiff received a notice of her right to sue under Title

VII and the ADEA, within 90 days of the filing of this action.

3.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343. Supplemental jurisdiction is invoked over State causes of action pursuant to 28 U.S.C. § 1367.

4.   Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

5.   Plaintiff filed a Notice of Claim on September 19, 2014. A 50-h hearing was held on November 12, 2014.  Defendants have failed and/or refused to make adjustment.

6.   Any and all other prerequisites to the institution of this action have been met.

## **PARTIES**

7.   Plaintiff, Martha Amato ("Amato" or Plaintiff") is a forty-four-year-old female originating from El Salvador and is opposed to discriminatory practices, was and still is a resident of the County of Suffolk, State of New York.

8.   Defendant, County of Nassau ("County"), was, and still is, a municipal corporation organized under the laws of the State of New York and located in Nassau County, New York, which operates and controls the Nassau County Police Department ("Department").

9.   Thomas Krumpter ("Krumpter") was, and still is, Acting Police Commissioner for the Department.   Krumpter works in Nassau County, New York.   As the Acting Police Commissioner, Krumpter has final authority to assign work responsibilities, bring disciplinary charges, transfer employees, and set policies.   Krumpter was in a position of authority over Plaintiff, maintained a supervisory position over Plaintiff in her employment, and had authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of her employment.   Accordingly, he is a supervisor under the applicable laws. Further, he is an employer under the applicable State Laws.   Krumpter participated in and/or was generally aware of and/or remained deliberately indifferent to the unlawful conduct as set forth herein.

10. Ronald Walsh ("Walsh") was an Inspector and Commanding Officer of the Nassau County Police Academy ("Academy"), assuming control of the Academy In January 2014, and continuing during the relevant period.  In January 2017, Walsh was promoted to Deputy Chief, and remains Commanding Officer of the Academy. Walsh works in Nassau County, New York. As Commanding Officer, Walsh had the authority to assign work to Amato, issue certain discipline, and to recommend more serious discipline or terminate her employment. Accordingly, he is a supervisor under the applicable laws.  Walsh was aware of and/or remained deliberately indifferent to the unlawful conduct as set forth herein.

11. Michael Savino ("Savino") was a Police Sergeant for the Department, was in a position of authority over Plaintiff at the Academy, maintained a supervisory position over Plaintiff in her employment, directed Plaintiff's daily work activities, and had authority to

undertake or recommend tangible employment decisions and/or control the terms and conditions of her employment. Accordingly, he is a supervisor under the applicable laws. Savino actually participated in the unlawful conduct as set forth herein.

12. Dennis Boody ("Boody") was a Police Sergeant for the Department, was in a position of authority over Plaintiff at the Academy, maintained a supervisory position over Plaintiff in her employment, directed Plaintiff's daily work activities, and had authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of her employment. Accordingly, he is a supervisor under the applicable laws. Boody actually participated in the unlawful conduct as set forth herein.

13. Daniel Hastings ("Hastings") was a Police Officer for the Department, was in a position of authority over Plaintiff at the Academy, maintained a supervisory position over Plaintiff in her employment, directed Plaintiff's daily work activities, and had authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of her employment. Accordingly, he is a supervisor under the applicable laws. Hastings actually participated in the unlawful conduct as set forth herein.

14. Robert Browne ("Browne") was a Police Officer for the Department, was in a position of authority over Plaintiff at the Academy, maintained a supervisory position over Plaintiff in her employment, directed Plaintiff's daily work activities, and had authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of her employment. Accordingly, he is a supervisor under the applicable laws. Browne actually

participated in the unlawful conduct as set forth herein.

## FACTS

### First Amendment Protected Activity

15. On February 5, 2014, Amato took a polygraph examination at the Department as part of her screening for the position of Police Recruit.

16. While waiting for her polygraph examination to begin, Amato heard a conversation between the two Police Officers, including Detective Brian Blackwell ("Blackwell"), who were administering polygraph examinations.

17. During this conversation, Detective Blackwell and the other Officer discussed a separate examination, which was to be used for candidates who had connections to the Department.  Upon information and belief, this separate examination is intended to be less invasive and/or stringent, thereby increasing a candidate's chances of passing the exam.  Thus, having double standards allowed flawed candidates to slip through the system resulting in less qualified Police Officers.

18. During their conversation, one of the Police Officers noticed Amato, and indicated that they had not previously known she was in the room.

19. When Amato questioned the Police Officers about their conversation, they refused to continue their discussion.

20. Amato took her polygraph examination, and Detective Blackwell told her she had passed.

21. On February 6, 2014, Amato complained about the polygraph examination double standards to her Processing Officer, Linda Turrell, who was responsible for processing Amato as a Police Cadet candidate.

22. On February 7, 2014, Amato called Edward Mangano ("Mangano"), Nassau County Executive, to complain about the polygraph examination double standards.

23. During their conversation, Mangano advised Amato to call Acting Police Commissioner Krumpter, and gave Amato Krumpter's direct phone number.

24. Thereafter, on February 7, 2014, Amato called Acting Police Commissioner Krumpter, and discussed the double standards relating to the polygraph examination given to Police Recruit candidates.

25. Following her call with Krumpter, Amato called the Department's Internal Affairs Unit, again detailing her complaint.

26. Following her complaints, Amato was told that she needed to sit for a second polygraph examination.

27. On February 11, 2014, Amato sat for a second polygraph examination, despite being told that she previously passed her examination.

28. On February 11, 2014, Amato followed up with her complaint concerning the polygraph, filing a formal complaint concerning same with the Internal Affairs Unit.

<u>Amato Commenced Employment at the Department</u>

29. On May 1, 2014, Amato received an email inviting her to attend the first day of hiring for Police Recruit candidates on May 2, 2014.

30. On May 2, 2014, Amato received a call from the Department and was told "I'm calling to tell you, don't show up today. You were disqualified ... No appeal, you're just not in. That's it."[1]

31. Later that day, Amato met with Commissioner Krumpter who told her "This morning, I got up and thought about it, but you're not in... Maybe it was something about your background ... If you don't like it, then go to Supreme Court."

32. Despite the conversation with Commissioner Krumpter, On May 3, 2014, Amato received a call from the Department inviting her back for the second day of hiring for Police Recruit candidates on May 3, 2014.

---

[1] The use of quotations herein means that the actual words quoted were used or words to that effect.

33. On May 5, 2014, Amato completed the swearing in ceremony and began her employment with the Department as a Police Recruit in the Department's Police Academy.

34. After the ceremony, Commissioner Krumpter sent for Amato to meet with him at his office. During the meeting, Commissioner Krumpter told Amato "You have been given a second chance, but I guarantee you that you won't have a third... These people from the Academy don't know who you are." Amato was then dismissed.

35. On May 6, 2014, Amato was undergoing training in a local park. A Sergeant suddenly approached Amato and yells that he did not like her appearance. The Sergeant also screamed "What were you told yesterday, Amato? What did Commissioner Krumpter tell you yesterday, Amato?"

36. The Sergeant then dismissed the Police Recruits, with instructions to return to the Police Academy in carpools with each other and anyone who was late or absent would be fired. Upon being dismissed, Amato was unable to join any carpools because the Police Recruits in her training group had overheard her being targeted and did not want to associate with her.

Discrimination and Hostile Work Environment Harassment

37. In mid-May 2014, Amato was required to complete a form to register for gym use during Physical Training/Defensive Tactics classes ("PT/DT"). In response to one of the questions, Amato identified herself as originating from El Salvador. As Amato was finishing the

form, Sergeant Savino took her forms. He later stated to her, "You're not going to make it in this Academy and I'm going to make sure of it."

38. In mid-May 2014, Officer Brymer told Amato, "Here in this Academy, a woman is bad until proven good and a man is good until proven bad. It's just the way it goes. So you have to work twice as hard or more." Officer Brymer also told Amato, "You are too old and you're a woman."

39. In late-May 2014, and while located in the gym with her class of Police Recruits, Officer Hastings gathered the class, and told them that he had to "apologize for the females" but promised that "if [females] can't keep up with the younger males, [Officer Hastings] would see to it that [females] weren't in his Department."

40. Approximately a week later, during PT/DT in the gym, Officer Hastings loudly stated to Sergeant Savino within the audible range of Amato, "El Salvador... I don't know any El Salvadorans that isn't a MS-13[2] member.''

41. On May 29, 2014, Officer Hastings required Amato to prepare a letter as to why he should continue to train her. Later that day, Sergeant Savino attempted to require Amato to sign a PT/DT report regarding her training. When she refused, and questioned the accuracy of the report, he then sent her to Commanding Officer Walsh's office.

---

[2] MS-13 is a criminal gang which is believed to be predominantly composed of El Salvadorans.

42. On May 28, 2014, Sergeant Savino attempted several times to have Amato sign the inaccurate PT/DT report, but Amato continued to refuse to sign the PT report because she found its contents to be inaccurate.

43. On June 2, 2014, Officer Browne told Amato, "What do you think you're doing? Signing Savino's form is required. You are mandated to sign. It doesn't matter what you think, you do as we say." He also said, "If you don't sign that letter, you are officially out of PT/DT and will be dismissed for insubordination." Amato again refused to sign because she contested the accuracy of the report.

44. Later that day, Sergeant Savino again approached Amato and asked, "So are you going to sign or not? If you don't, we will take it to the next step." Amato reluctantly submitted to the intense pressure and signed off on the report, but only because she believed that the "next step" would be dismissal for insubordination, as per Officer Browne.

45. Amato was subsequently denied access to the gym and PT/DT classes for twenty (20) tours. After several requests, she was permitted to observe the defensive tactics classes, but was continually barred from participating. Upon information and belief, participation in PT/DT classes were required in order to become a police officer.

46. On mid-June 2014, Sergeant Boody asked the Police Recruits whether anyone had brought their phones to the Police Academy. Amato, having inadvertently brought her phone, raised her hand and attempted to find her phone in her bag. When she could not find it, Sergeant

Boody informed Amato that somehow another Police Recruit had her phone and said, "If you don't take the blame for it, we are going to charge him with a crime and arrest him" Consequently, Amato was coerced into writing a letter regarding the situation.

47. During this mid-June 2014 phone incident, Sergeant Boody and Savino met with Plaintiff. When they arrived in Sergeant Boody's office, Sergeant Savino questioned Amato with questions such as "Did you come into this country illegally? How did you come into the country? How did you manage to arrive by plane?" When Amato responded that her father had obtained proper immigration visas through his business, Sergeant Savino exclaimed, "A business! Of course, they let anybody in because their DADDY has a business! Disgusting!"

48. In mid-June 2014, Officer Browne, while looking directly at Amato, told the Police Recruits to "work together with them in trying to get rid of people they didn't want in... especially if you know this person the staff doesn't want... you might even be rewarded for it."

49. Also in late-June 2014, Amato was pulled out of class by Officer Brymer and subjected to a full body inspection. Amato was told to strip down, including removing her bra, and change into her PT/DT clothes. When Officer Brymer saw another recruit in the locker room, she appeared shocked and yelled "You're not supposed to be in here! Get out!" After Amato finished changing, Officer Brymer reported to Officer Hastings and said, "It's done." No other Police Recruits were subjected to similar treatment.

50. On June 25, 2014, Amato was reinstated to PT/DT classes after being forced to miss twenty (20) tours. No other Police Recruit was denied PT/DT classes for a similar length of time.

11

51. On June 26, 2014, Amato submitted a written complaint to Sergeant Boody that she had been denied the requisite training and requesting that she be given make up classes, due to concern that she could be injured after being thrust into advanced training for which she was not prepared.

52. In response, Sergeant Boody brought Amato to Sergeant Savino who stated that he did not trust her, that she did not belong there, and that this was putting him "on notice." Consequently, she was not permitted to make up the missed tours.

53. On July 2014, Amato received an academic score of 79, which was above the minimum required score of 75. Nevertheless, Sergeant Boody told Amato that "things were changing. Ignore what it says in the book. If you do not have an 80 average, you're getting kicked out and you will be forced to resign." Amato was the only Police Recruit affected by the unilateral change in the dismissal requirement, as all other Police Recruits scoring below 80 had received scores that were less than 70, and thus, the unilateral change would not have affected them.

54. On July 2, 2014, Amato took a midterm physical assessment examination. While she received passing scores on all but one task, she was told that she would not be allowed a grade for the test. Upon information and belief, no other Police Recruits were not allowed a grade for the test.

55. In early July 2014, Amato participated in running drills and maintained her speed with Officer Cestaro. When she commented that she had kept up with his pace, he stated, "I didn't see it. You're not what we want here."

56. In mid-July 2014, Officer Browne stated to Amato, "Forty-one is old. Most people retire at forty-one, my wife is retired. And here you are trying to start the police academy. Your age is not when you try to become a police officer. It just doesn't go that way." Browne also told her "I hate coming to work because of you. I'm going to request your termination. It's not going to work out."

57. When Officer Browne made the comments concerning Amato being "forty-one," Amato opposed his discriminatory comments, stating that they were "illegal."

<u>Further Discrimination and Unlawful Retaliation</u>

58. On July 11, 2014, Amato was injured during her employment and was diagnosed with shin splints and a bone contusion.

59. On July 12, 2014, Amato promptly gave notice of her injury to Sergeant Richard Keddy and On July 14, 2014, gave notice of her injury to Sergeant Arthur Pitre.

60. On July 14, 2014, Amato was evaluated by the Department's chief surgeon, who placed her out of PT/DT based upon her injury until further notice.

61. That same day, Deputy Inspector Loma Atmore kept Amato after hours and questioned Amato about her injury. When Amato asked if she could call her family to ensure a caretaker for her children after hours, Deputy Inspector Atmore responded ''You're not going anywhere. You're not seeing your children. You're not going until you write this [injury report] and these answers how I need them exactly."

62. On or out July 25, 2014, Amato was pulled from her class and taken to Commanding Officer Ronald Walsh's office, with Deputy Inspector Atmore also present. Commanding Officer Walsh presented Amato with a letter of resignation and demanded that she sign the letter of resignation, stating "if you don't sign, you will be terminated." Nevertheless, Amato refused to sign the letter of resignation.

63. Consequently, on July 25, 2014, Amato was terminated from her employment upon pretextual bases.

64. On July 26, 2014, in retaliation against Amato for having given notice of her injury and for having refused to submit her resignation, the Department released a newspaper article through Newsday stating that Amato had been fired from the Nassau County Police Academy for "conduct and performance," among other retaliatory statements.

65. The public disclosure of Amato's history, employment, termination and the subsequent public backlash caused Amato mental anguish, severe and lasting embarrassment, emotional distress, humiliation and loss of reputation.

66. Following Amato's dismissal from the Academy, the Department contested her Worker's Compensation application, in further retaliation.

67. On October 27, 2014, at a Workers' Compensation hearing, Judge Michael Rubino issued an award for Amato for her work-related injuries for the period of July 13, 2014 through October 28, 2014. Judge Rubino's decision found sufficient evidence that the injury was work related, with the possibility of becoming a permanent disability.

68. On April 24, 2015, Judge Michael Rubino confirmed that Amato was entitled to an award for her work-related injuries and awarded her an additional sum, which included partial salary payments.

## **CLAIMS FOR RELIEF**

69. Individual Defendants Krumpter, Walsh, Savino, Boody, Hastings, and Brown, under color of state law, altered Plaintiff's terms, conditions and privileges of employment because of her gender, national origin, and her exercising her right to free speech, as well as her opposition to discriminatory practices, in violation of the First and Fourteenth Amendments to the United States Constitution (as enforced by 42 U.S.C. § 1983) by subjecting Plaintiff to a hostile work environment and adverse employment actions.

70. Defendant, the County, is subject to Monell liability because the County's maintained a policy, practice or custom, whereby it committed, condoned, and/or remained deliberately

indifferent to the aforementioned constitutional violations, which may be inferred in the following ways:

    a.     Defendants' maintained a custom or practice of discriminating and retaliating against Plaintiff. The unlawful practices were so persistent and widespread that they constitute actual and/or constructive acquiescence of policymakers.

    b.     The County's high-level supervisors and/or persons responsible for preventing Constitutional violations and failed to properly investigate, prevent, remedy, or correct the unlawful conduct.

    c.     Inadequate training/supervision was so likely to result in discrimination that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

    d.     Policymakers knew of and failed to correct the unlawful conduct.

71. As set forth above, Defendant County subjected Plaintiff to a hostile work environment and adverse employment actions in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq*, on the basis of her national origin, gender, and/or opposition to discriminatory practices. Plaintiff's Title VII claims are only asserted against the County of Nassau, not the Individuals.

72. As set forth above, Defendant County subjected Plaintiff to a hostile work environment and adverse employment actions in violation of the Age Discrimination in Employment Act of 1967, as amended. Plaintiff's ADEA claims are only asserted against the County, not the Individuals.

73. As set forth above, Defendant County subjected Plaintiff to a hostile work environment and adverse employment actions in violation of New York State Executive Law, Human Rights Law § 296, *et seq*, on the basis of her national origin, gender, age, and/or opposition to discriminatory practices.

74. Individual Defendants Krumpter, Walsh, Savino, Boody, Hastings, and Browne, aided, abetted, incited, compelled, coerced and/or condoned the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law § 296(6) by actually participating in the unlawful conduct, and/or for being aware of such conduct and failing to remediate same.

WHEREFORE, Plaintiff demands judgment against Defendants, where applicable, for all compensatory, emotional, physical, punitive damages, lost pay, front pay, injunctive relief, and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.  Plaintiff demands a trial by jury.

Dated: Carle Place, New York
      May 16, 2017

                                   **LEEDS BROWN LAW, P.C.**
                                   *Attorneys for Plaintiff*
                                   One Old Country Road, Ste. 347
                                   Carle Place, New York 11514
                                   (516) 873-9550

                             _____/s_____
                                  RICK OSTROVE
                                  SEAN O'HARA